May it please the court, good morning. I'm Roger Wheaton with the Luganville firm representing Longhai Desheng Appellant, a small seafood company located in southern China. I'm going to go through, unless the court doesn't want me to, the facts briefly, but the real brunt of our appeal comes post the jury verdict. This matter arises out of 11 shipments of Chinese crab meat sold on an open account to a Louisiana company, Louisiana Newpack Shrimp, and the transactions took place between August of 2017 through December of 2018. There was no formal contract between the parties. However, there was, of course, a dealing that took place between Longhai and Louisiana Newpack. Louisiana Newpack was the financier of this operation, and in order to purchase the crab meat in China, it engaged Ocean Feast, a Chinese entity represented by Mr. Arthur Zhang. Was the crab meat sold in its shell? No. The crab meat is taken out, Your Honor, and then it's pasteurized and then put in a metal can, and in this case, the metal can had a private label on it, a special, you know, like, instead of bumblebee, but it was a, and for each sale, Louisiana Newpack provided its letterhead to Mr. Zhang, who then prepared purchase orders in the name of Louisiana Newpack for each of the 11 shipments. Louisiana Newpack needed that crab meat in its own name, and it used the product as collateral to secure its bank line of credit. All 11 shipments were packed and delivered by Longhai in the name of Louisiana Newpack, and throughout this 16-month period, there was never anyone from Louisiana Newpack that came back and said, no, this isn't the way we want it. We want it some other way. All the shipments were delivered without exception, never any complaints about quality, shortage, or any other deficiency. Now, over the 11 shipments, the first eight shipments were paid in full by Louisiana Newpack. As a matter of fact, no payments were ever made by anyone other than Louisiana Newpack. There developed a dispute between Ocean Feast, Indigo, and Louisiana Newpack, which led Louisiana Newpack to refuse to pay for the last three shipments, leaving a balance owed of $998,118.03. Despite not having paid for the crab meat, Louisiana Newpack willingly imported it, stored it in warehouses, paid tariffs on the product, took control of the product, and converted it for its own uses. The only entity that was never paid for the crab meat was Louisiana DeShang. It was owed the amount as stated previously, and that number was carried on the books of Louisiana Newpack. Okay. I think we're aware of the facts. I appreciate you discussing them, but to me, the question really is, you know, open account is contractual. It's not tort. It's not property. It's whatever. So it's contractual. Okay. But it's not necessarily a traditional contract. Right. So if you were writing, and I will ask your opponent this, if you were writing the paragraph in the opinion that explains what this contractual open account really is, what does it need, it's not the same thing as I'm going to write this thing, and you're going to sign it, and I'm going to sign it, and so on and so forth. It's different from that, but it's not totally like running a red light and hitting someone. So please explain how you would word that. Okay. Well, and the jurisprudence on open accounts clearly states that there's a difference between, as you've stated, your Honor, a formal contract, which is typically a writing, doesn't have to be a writing, but signed by both parties, which contains an offer and acceptance with the terms and conditions contained within the four corners of the document. That's what we would call a formal contract. However, many states have come up with open account statutes, which address a situation where there's no formal contract signed between the parties, but rather a contractual relationship is established through a course of conduct. There must be a contractual relationship, but that's different from a contract. A contractual relationship can be established by a contract, or in the absence of a contract, by a course of conduct. Well, it's a UCC course of dealing situation. Precisely, Your Honor. Okay. I've used course of conduct, but course of dealing is probably the better phrase, but exactly that. There is no, and we start off, there is no formal contract, but at the same time, there was a well-established, I mean, there was no formal contract, but there's a well-established course of conduct over the 16 months between the parties, and we felt that there was clearly established there was an open account. And this is where it comes from. Okay. And then in talking about the jury questions, the jury has to follow whatever the judge says this word means. Right. So if the judge says a chicken is something flying around Alaska, even if that seems kind of weird, you have to follow it. Okay. And so the definition of contract, the definition of open account, that's what the jury had to follow. And so if those seem different, that's okay for the jury to say yes to one and no to the other. Absolutely. Or no to the first one, yes to the other. And that's exactly what they did. And they came out, and as a matter of fact, Your Honor, I don't know if we, could we provide that? Oh, I'm sorry. I thought it had been provided previously. But this is just the verdict form. That's in the record. I know. Oh, it's definitely in the record, but it very clearly stated, was there a contract? No. And then it goes on to the open account. And the definitions are, you know, more than just, gee, I wonder what a contract is. No, but I mean, the district court gave definitions of these. Right. Exactly. Okay. And so that's what the jury has to follow. Even if those are wrong, that's what the jury has to follow. And it clearly... And I'm not saying they're wrong. I'm just saying that is what the jury follows when we're trying to figure that out. I think there's a certain amount of confusion, even amongst lawyers, trying to sit here, as we just went through, what's the difference between a contract, a contractual relationship, and an open account? They both have to have, or all of them have to have a contractual basis at some level, but it doesn't mean that there's a formal contract. And the way it was described to the jury, it was done as an alternate. And this had been briefed before the jury instructions. The jury was given the instructions, and the jury followed those instructions. And then two days after the jury was discharged, the court entered the original judgment, which basically took the shang on the open account, plus attorney's fees and costs. And you don't disagree with the only award of one-third of the amount? No, Your Honor. That was... I can't say I was very pleased about it. I mean, if they were joint venturers, each venturer would be jointly and severally liable, but... That may be. I'm not certain exactly, but it was... I mean, this is a very simple case. The judge either had a legal basis for granting judgment as a matter of law or not. Precisely, Your Honor. It comes down to... And you're saying we need to pick which of the two judgments was correct. Well, I think really it's a little bit easier than that, because I think when you look at the... It's very clear, no contract. Very clear, yes, open account. And it's very clear in Louisiana law that those are two alternate possibilities. Exactly. End of story. What else do you have to say? That's essentially it other than... I'm not trying to be rude, but... No, no, no, no. I appreciate the candor. But really what it comes down to is once the jury... And this now, we've gone through, the jury spoke. As you pointed out, Your Honor, I got a third recovery. That wasn't a great day for me, but it is what it is. But at the point when the court is reviewing the post-trial Rule 59 motion and looking at the verdict, the first obligation of the trial court sitting in a jury situation is to try to harmonize the verdict. And I think when the judgment was entered the second day, that's exactly what was done. And so we don't have any objection to the original judgment. As a matter of fact, we feel like the jury got it right. We feel the mistake... So you're asking us to reverse and render in the form of the original judgment? Yes. Okay. Yes. And maybe that will be helpful if I just go right... We either feel... We feel that the judge did not harmonize the verdict, and it clearly can be harmonized, which would then vacate the amended judgment and reinstate the original judgment. There's one other... It is inaccurate to say that Long High takes the original judgment and makes a position that a contract is not required for an open account claim. That was a misconception. Well, not entirely, Your Honor. All right. You're going to mess up your argument at this point. Your argument is not a traditional contract. Not a traditional. What I'm saying is it's necessary that there's a contractual relationship. Right. But I mean, this is to the extent... The judge argues that a contract is not required for an open account claim. You know, that's... Long High's reliance is misplaced. That's a misunderstanding of your position. Yes, because what I'm saying is... That's all I'm saying. Okay. Thank you, Your Honor, unless there's anything further. No. Thank you. Mr. Ballard. Please, the Court, Your Honors. I want to start with a little bit about what the jury actually heard, because what the jury heard is much different than what counsels represented. They want to characterize this as a simple contract-slash-open-account case about a bunch of orders of red-swimming crab meat. That's not what this case was about. This case involved a mountain of evidence about issues like agency, authority, who was doing what for whom. You had Ocean Feast from California, who was procuring the crab meat. You had a company that we settled with right before the case from Miami, Florida, that was selling it after it was procured, and you had Louisiana Newpac involved. And most importantly, Your Honors, what the jury heard was that when the Trump tariffs got put in place and the red-swimming crab meat got all economically out of whack, two of the joint venture partners conspired with Longhive to undercut the joint venture and send in more crab meat, importantly, Judge Jones, over the objection of my client to not send more crab meat into the United States. So when we talk about harmonizing a jury verdict and confusion that might have happened as a result of what I would contend, Your Honors, was an inappropriate jury instruction on open account. But I thought everybody agreed on these jury instructions. We did not, Your Honor. We objected. What did you object to precisely? We objected to the entirety of the instruction being given absent the directive that a contract was required. And on that point, Your Honor and Judge Haynes, you asked, if I was going to write what an open account claim was, I would go back to exactly what Judge Vitter did in the Rule 59 eMotion. She looked at the statute. This is what the statute says. And this is in her Rule 59 eMotion. The open account statute reads in parts that you can obtain additional recovery if you have an open account which includes, and this is quotations, any account for which a part or all of the balance is passed to, whether or not at the time of contracting the parties expected future transactions. So, Judge Jones, I don't think this is a UCC-9 course in conduct. This is a Louisiana law specific remedy. The statute says at the time of contracting. So you can't just read out  Well, I mean, they had eight crabs they paid for, so there was some form of contractual relationship. So that's at the time of contracting. It just isn't a thing we write out and it's 50 pages long and 100 lawyers work on it and then we all sign it. It's not that contract. You are correct, Judge Haynes. And to the point that Longhigh is now arguing to this Court that its primary claim was not a breach of contract and the open account claim was not an appendage to that, I would direct the Court's attention to the jury verdict form that Longhigh submitted before. It's a contractual relationship. The fact was the way the judge defined a contract is different from a contractual relationship. It's a traditional contract like I was talking about. We write out, you and I sign all that. Judge Jones, that's exactly what I was going to say. At the time of contracting involves concepts of offer and acceptance. The evidence the jury heard was that there was not offer and acceptance between my client and Longhigh because the people that were engaging in the negotiations at that time, it was Ocean Feast. Ocean Feast had met with Longhigh, had briefed Longhigh on the arrangements. That is why I believe, Your Honors, after hearing, if you listen to Mr. Wheaton's testament, to his testament of the case, how did he lose? Did you win on your other agency and conspiracy issues? We did, Your Honor, because the jury reduced to zero any recovery that Longhigh could have. Well, the jury reduced Hugh to one-third. No, Your Honor, in the jury verdict form, there were two spots. And this is at R6609. Had two spots. They were asked the amount in dollars by which Longhigh Dacheng's claim should be reduced, $665,458. And then they were asked, do you find Ocean Feast liable? Yeah, but that was between Louisiana NEWPAC and Ocean Feast. That's a different part of it. It's not what the jury understood. No, that is what the case was. That's not what Vitter is reasoning. But that is how Judge Vitter harmonized the jury verdict over what Mr. Wheaton is contending is an inconsistent jury instruction or an inconsistent jury verdict. We objected. If anyone had a basis, if anyone had a basis to object to the jury instruction on open account, it's my client. It should not have been given as is. We lodged that objection. We gave the district court, in the Rule 59e motion, two choices. Harmonize the jury verdict with the fact that the jury said zero, regardless of what Rule 14 says. Or secondly, recognize and on this point, Your Honors, there are... But if I owe you something and Judge Jones owes me something, that doesn't mean she owes it to you. So then I'm found to owe it to you and I go out and get it from her. That's the way those things work. But Judge Haynes, you're talking Rule 14. You're not talking about what the jury heard. And this was a jury trial. We are bound by the factual determination of the jury. The jury made a factual determination that my client was not responsible one penny too long high. They heard the evidence on agency. They heard the evidence on who had the authority to act. They heard the evidence on who conspired with whom. Mr. Ballard? Yes, Judge. I am looking at Judge Fitter's opinion on Rule 59. Analysis is part three, starting at, I don't know, page 20 or so, and it's only about the open account claim and the requirement that that part of the verdict, is there a contract, you need a contract for an open account. That's all I read. I don't read all this Rule 14 that you're talking to us about as a basis for her 59 order. Our Rule 59 motion that we brought had two bases, Judge. I know you may have... She chose what I think is the right basis because she went back, recognized a mistake that she made during the heat of trial that was... I mentioned... No way, no way. She, I don't care who made, what I'm saying is we're reviewing a district court judgment, removing the jury verdict on the basis that you have to have a, quote, contract in order to have a, quote, open account. That's all I see her saying. Where am I misreading it? With all due respect, Judge Jones, I disagree with that. If you go back and look at the trial record... What did Judge Vitter say in her written opinion? Judge Vitter said that she should not have given the open account statute instruction as a separate cause of action. She recognized that Long High itself, when it presented its original jury verdict form, recognized this concept because in their original jury verdict form, they had question one. Was there a contract between party A and party B? Answer, no. Sign your form and send it back to the bailiff. End of case. Don't answer any other questions about open account. So for Long High to now stand before this court and argue that there's some difference between a contract for a contract and a contract for an open account is to take undue advantage of what it felt its case was and how the case was presented to the jury. Well, that's the way the chips fall sometimes in complicated cases. But not, Judge Jones, in a case in which the jury has spoken as to the facts. Well, you're trying to make a different argument than the district court ruled, which I suppose is your prerogative, but... She certainly, and I think would have been justified, in accepting our alternative argument in the Rule 59 motion. Right. But she didn't need to get there. It was moot because she said, Louisiana law. We cited 15 cases in our brief. They rely on two, and those two say contract. Look, I used to do collection cases in Texas. A sworn account is what you do when you purchase things on invoices. Now, the UCC would construe those as a contract because the parties have agreed and you have a course of dealing. I think I have every reason to believe that a Louisiana open account is basically the same as a Texas sworn account. I think the Louisiana open account statute speaks to the requirement that at the time of contracting, there has to be future contemplation of business transactions. There are abundance, and as I said, we cited 15 cases in our brief. Every case talks about the necessity for contracting and that's why I go back to an instruction about what the jury heard, Judge Jones. What turns this away, you say, with an expectation of future business? Well, if I buy a tire from the tire shop, I buy one tire. I may need three others someday. You're saying the tire shop could not sue me on an open account for that tire unless it knew that someday I would come back for the other three? I don't believe it's a matter of law. You have an open account claim there. What's your best Louisiana case for saying that? Each one of the cases that we cited, each one . . . I'll go to the brief. What's your best case, please, that turns on, is there an expectation? Judge Jones, every one of the cases that we cited . . . Blackie's rental tool, Bridges v. City Financial, Accusess Environmental, Montgomery Steyer and Partners, the William B. Coleman Inc. case, the Morgan case cited by Judge Afric, which was the point of contention at the jury charge construction. All of those cases say at the time of contracting, there has to be a contemplation of future transactions upon which credit would be given. That was also an issue that the jury heard the evidence . . . They being the joint venture, which was the whole sense of what the jury . . . It was not the Louisiana new pact. But it was always Louisiana new pact. If there's a joint venture, each joint venture is jointly and severally liable. Then why didn't Long High sue all three joint ventures? Well, because they didn't have to. Because you can sue the one that's a deep pocket. Because they conspired with the other two joint venture partners. The jury heard all that evidence and said, you get nothing. Well, you can . . . No, they did not say that. They did, Judge Haynes. They reduced the jury verdict to zero. It did not say that. It's basically like what I said. I owe you money. Judge Jones owes me money. That is a different thing for the jury to address these two different relationships than to say, nobody owes anything to you. The jury was not instructed on joint venture liability. The jury was not instructed on Rule 14. Okay, but that wasn't what the case was about. The jury used its common sense. Louisiana new pact had sued. The jury used its common sense to get to a zero. We're using our common sense, too. Sorry. And if you go back and look . . . And Judge Jones, if you go back and look at the opening count instruction, it lacks any mention of a contractual arrangement. So if that's the conclusion, if that is the conclusion that this panel reaches, that jury instruction is invalid as a matter of law, we objected to it. He doesn't get to win because he does not get to benefit from a jury instruction and the confusion of the jury that he himself created in this mess. So that objection is lodged in the record. The district court knew the objection was lodged in the record. Which objection? The objection to the open account statute instruction ever being given and being given without an explanation of what contract is a requirement. I would submit, Your Honor, if the jury had been instructed that an open account requires a contractual arrangement, which they weren't, we wouldn't even be here because it would be all zeroes. They would have checked no. And it is . . . It was the district court's requirement . . . Why would they have checked no? Because they found no contract. On that point, nobody disagrees. They heard five days of no contract. They said no contract. Mr. Wheaton was very good at trial. He waived 11 purchase orders. Okay. I mean, if it was that . . . I don't understand why Judge Fitter wouldn't have ruled on that if that was her . . . the strongest point. They used the term other business transactions and expectations of other dealings and so forth in the district court's open account jury instructions. But there's no mention of the word contractual arrangement, Judge Hanson. I think what you're . . . That's the fatal flaw. I think what you're trying to say is that Parts 6 and 7 of the verdict should have been inseparably connected to the other five parts. Is that what you're saying? Your Honor, as it was originally proposed, I agree because it should have never been split out. It should have always been with a contract. Longhine knew that when it submitted its original jury verdict form, which the record cite for that, which is important, I think, for this court, it's at ROA 5147, 5148, and 5149. It should have been together because they run together. They don't run separate. The open account claim was an appendage. I can't tell you, Judge Jones, how many times Mr. Wheaton told me before trial this was a simple contract case. And he stood here and said, we didn't have a formal contract. That's not what they argued to the jury. They argued that every one of the purchase orders was a formal contract, ergo, you're liable. The jury rejected that unqualifiedly. But they looked at this thing about an open account requires a course of dealing between the parties, so on and so forth. I don't think there's a specific word contract that they have to use. They have to explain the relationship. And that is what's done in this jury charge. And the jury has to follow that, has to follow those instructions. I don't disagree with you, Judge Haynes. You have to follow that instruction. I don't think that jury instruction is accurate nor based on the statute. Judge Vitter, in her opinion, recognizes that the statute talks about a contractual arrangement. Judge Vitter recognizes that both of the cases that the appellant relies on, the Seinleit and the Morgan case, both of those cases clearly say you have to have a contract. With all due respect, Judge Jones, the UCC, I've, unfortunately, I like to stay in Louisiana. I know people that like to practice in Texas. But, oh, and I don't mean, the UCC is foreign to me. I think this panel is bound by what the open account statute says. It's not a course of conduct. It has requirements. There are 17 to 18 Louisiana state court decisions interpreting it. And I think the district court got it right. They could have gotten it right under either basis. And I think the district court harmonized what it heard the jury do. And that should be affirmed. You know what I bet the jury was thinking? The jury was probably thinking, they got the crab, didn't they? That's a good question, Judge Jones. Who got the crab? The other joint venture partners. Because what happened, this is the other thing the jury heard. What happened was, after Louisiana NUPAC said, don't order new crab, Ocean Feast and Indigo conspired with Long High to take more crab in, and they sold that crab. And there's testimony from Long High's, I took it over Zoom, in a courtroom just across the way. And she admitted that they knew what they were doing was not the right thing. And so that's where I say, when you read jury verdict form seven, I believe, or it might be six. You can go back and collect against them according to your judgment, correct? If it's collectible, perhaps. And I don't think that that is what the jury intended to do. You know, when you lie down with dogs, you get up with fleas. And you had bad, your client had some bad partners, and they're now having to pay the price. And those two dogs with fleas got with a third dog with fleas, because they, those parties overextended themselves. Which is why you have a judgment over against the other people. But Your Honor, I think if you, the jury heard all this and came up with its result, the district court harmonized that result in its Rule 59E order, the result is zero. That is what the jury intended to do. The jury doesn't know about Rule 14C, third party practice. The jury doesn't know about joint venture debts. Could you go back to the district court and ask her whether she did the wrong thing and she should have just harmonized? Judge Jones, I was, the Rule 59 opinion, I thought, was spot on because I fought like an open account claim is separate and independent from a contractual claim. It was an appendage in this case. I didn't think it was correct then, and I think the district court did the right thing. Was it not correct as a matter of law or a matter of fact? Just answer me very briefly, please. I do not believe that it was correct as a matter of law, Judge Jones. Okay. Thank you, Ms. McGraw. All right. Mr. Wheaton. Well, I've got to start off with, do you find by a preponderance of evidence that Long Hyde DeShang is owed the outstanding balance of $998,188.03 on the open account from Louisiana NUPAC? Yes. So any understanding that the jury was confused about the open account and who owed it, it's right there in black and white. Two days later, the court, which likewise sat through the five-day trial, was able to enter a judgment in favor of Long Hyde DeShang on the open account in the amount as reduced by the jury. There was no confusion here as to what the jury found. The judge in the original judgment basically put down exactly what the jury was found. And the argument that because as to the amount that Louisiana NUPAC owed to Long Hyde DeShang, the fact that the jury then said that he had a right to recover it back over against Ocean Feast, that doesn't erase his original or the original debt of Louisiana NUPAC. He says you never argued open account to the jury, but you argued a specific contract. I mean, you can look at the record. That's not the case. I clearly emphasized the open account. Why? Because I didn't have a contract that specified a recovery for attorney's fees under the open account statute. It's mandatory. So I was very, very focused on the open account. And as the judge instructed the jury, these were done as alternates, and I definitely pushed for the alternative of the open account. And I don't think there was any confusion at all. And I think the confusion started after the court, I don't understand, but I think the court got in and ended up doing it. What did you say in response to the idea that their Rule 14 argument? First of all, it doesn't even apply. They were trying to use a 14C procedure where those of us who have practiced admiralty law, that's where you tender a third party directly to the plaintiff. 14C doesn't apply. Mr. Ballart, in an argument, basically said, oh, hey, I originally trained as a maritime lawyer, may I have 14C, whatever. But it's completely different. 14A does not have the tender of the defendant directly. So that's the big difference. He had a 14A claim, and he asserted it, and he was successful on that. That's why Ocean Feast was cast. But as far as a 14C, no such thing exists in a non-maritime setting. Well, he's saying, all right, but it de facto harmonizing the jury verdict. In other words, he said they were exonerated according to this conspiracy. Which would require a trained jurist, Judge Vitter, to buy the argument that because he has a right of recovery over against the other party, that means I get zeroed. No, that may mean if he's successful, he's not out of pocket. But that doesn't reduce my recovery. And I don't believe Judge Vitter ever even would have seriously considered that. All right. Thank you. All right. Those are the arguments for this morning.